## Case No. 5,178.
GAINES et al. v. SPANN et al.
[2 Brock. 81.][1]
Circuit Court, D. Virginia. May Term. 1823.

[1] [Reported by John W. Brockenbrough, Esq.]

MARSHALL, Circuit Justice. This claim depends on two questions: 1. Were John and Samuel Garlick testamentary guardians of the children of Camm Garlick? 2. Were they bound, as executors, to collect the debt due from Pollard?

1. Were they the testamentary guardians of the infant children of Camm Garlick? His will, made in Virginia, empowers and directs his wife "to clothe, maintain, and educate his children, in the best manner that his estate, given to her, will admit." and desires her to consult his executors thereinafter named as to the mode of their education. It is admitted that a guardian may be appointed without using the term, and that no form of words is prescribed: but to appoint a guardian by implication, the powers essential to the office ought to be conferred. In this will, no power is given over the persons or estates of the orphans to John and Samuel Garlick. These remain with the mother, who is only to consult his executors as to the education of his children. She may follow or reject their advice, and they have no authority to enforce it. Nothing can be more clear, than that they are not appointed guardians in this will.

In his additional will, made in England, he ratifies and confirms the will made in Virginia, gives a legacy of £50 per annum to his wife, and directs that the guardians by his said former will appointed, shall, by their bond, of a sufficient penalty, "secure to be paid to his said wife for her life, out of the moneys coming to their hands, or which they shall be in receipt of, for the use of, or in trust for, his said children, the said annuity or yearly sum of £50. This is said to be a recognition of their character as guardians, and an appointment of them by implication to that office. This is a point on which I have felt no inconsiderable difficulty. The two papers making in point of law but one will, and the last ratifying, confirming, and establishing the first, I have supposed that they might be considered as if written on the same paper, at the same time; and as if the words of the last recited clause had been—"My will is, that the guardians of my children, herein by me above appointed, shall, by their bond, &c." Had this been the fact, it would have been very certain that the testator understood his words as appointing a guardian; and, although the powers of a guardian were in reality conferred on his wife, and not on his executors, the inference would have been very strong that the words of the last clause refer to his executors, and not to his wife, because the persons he supposed himself to have appointed, were directed to give bond, and to pay money to his wife. The allusion to his executors is almost as strong as if he had named them; and had he done so, had the language of such a will been—"It is my desire that my brothers, John and Samuel Garlick, whom I have hereinbefore appointed guardians of my children, shall, by their bond, &c., secure to be paid to my said wife, &c.," it would be difficult to resist the argu-

ment that such language would amount to an actual appointment. The subsequent clause, too, appointing Benjamin Pollard and the Rev. Thomas Hall guardians of the persons and estates of his children, until the legacies bequeathed to them in England could be collected and paid to the guardians appointed by his first will, would, under the same view of the case, afford an argument equally strong in favour of the construction for which the plaintiffs contend. I was the more disposed to yield to this construction, from perceiving that the chancellor, who decided the cause in the state court, treated John and Samuel Garlick as guardians. Had this point been directly made, and directly determined by him, the leaning of my own judgment to the contrary opinion would, probably, have yielded to my respect for his decision. But the point was not directly made; the report was not excepted to on this account; and the parties seem to have proceeded on the idea that John and Samuel Garlick were to be considered as guardians, and were, in that character, liable for Pollard's debt. Taking this view of the decree, I have felt it to be my duty to consider the question, uninfluenced by the proceedings of the state court.

I do not think that the case can be considered as if the two papers formed, in point of fact as well as law, one instrument. Had the provisions of the first will been before the testator when he wrote the last, the subsequent clauses could not have been founded on ignorance or forgetfulness of what he had before written, but would have shown his construction of the clause referred to. They would have shown his opinion, that the words he had previously employed were competent to the appointment of guardians for his children, and that he employed them with that intent. In such a case there would be great force in the argument requiring the court to construe these words as the testator himself obviously construed them. But in the case at bar, we have no reason to suppose that the will made in Virginia was in possession of Camm Garlick when he made his will in England. It rested only in his memory. We have, therefore, no right to suppose that the words used in it were used in a sense which they will not bear; we can only suppose that he was under a mistake respecting it; that he had no distinct recollection of it; that he supposed it to contain an appointment of guardians, when it contained no such appointment. I can find no case which decides that any thing passes by words used clearly under such mistake. In Wright v. Wivell, 4 Bac. Abr. 290 (reported in 3 Lev. 259, 2 Vent. 57, and Moore. 31), A. devised to his wife £600, to be paid to J. S., for the payment of lands he purchased from him, and are already settled on her for her jointure; the lands were not settled on her; and adjudged in favor of the heir; they did not pass by implication. The testator certainly supposed the lands were settled, but this mistake did not give the wife a right to them. So, in the same book, page 339, the following passages are cited from Godol. 282: "If a man says, out of the £100 which I bequeathed to A., I give B. £50; this is a good bequest of the £50 to B., because only a false demonstration in an immaterial circumstance, which shall not vitiate the legacy; but in this case, A. takes nothing; for words of diminution shall never be construed to give a legacy by implication. But if the demonstration be totally false, as if the testator says, I bequeath to A. the £100 which I have in my chest, and there is not any money in the chest, the legacy is void. So in the case at bar; a direction that money shall be paid to the persons who were, in a former will, appointed the guardians of his children, when no persons were so appointed, is a plain mistake, and can give no rights to those whom we may suppose the words allude to. Had his brothers been named, so as to render it absolutely certain that they were the persons to whom he alludes, this mere mistake would not, I think, under the authorities which have been quoted, or on general principles, have amounted to an appointment; their not being named would render it still more unjustifiable to put the construction on the will which is required by the plaintiff. If the words themselves be analyzed, nothing can be extracted from them intimating an intention in the testator to appoint; they only show the mistaken idea that he had made an appointment. This was completely an error in his recollection, and the court cannot, I think, supply the defect.

It is contended that they acted as guardians, and this fact is supposed to show their understanding of the will, and to have some influence on its construction. The proof that they acted as guardians is, I think, equivocal. Had the appointment been explicit, the evidence would be sufficient to show their acceptance of the office; but no regular appointment having been made, the evidence does not, I think, make out a clear case of their acting as guardians. Several witnesses depose to a general understanding, founded on the care they took of the infants and their property, that they were the guardians; but, I think, no fact, except signing a direction to the clerk to issue a marriage license for one of the young ladies, is proved, which is not entirely compatible with the relation in which they stood to the family, admitting them not to think themselves guardians. The testator had devised the whole of his estate to his wife during the minority of his children, charging her with their maintenance and education. There was, then, no estate for the guardian to manage. It did not belong to the children during their infancy, but to their mother. If their uncles attended to it, such attention could neither make them guardians, nor make the estate their prop-

erty. It was an attention to be expected from their connexion with the family, and they would have been chargeable with want of natural affection had they refused it. To the authority to the clerk to issue a marriage license, they sign their names, but do not add their character as guardians. This cannot make them guardians; and although it would amount to an acceptance of the guardianship, had they been appointed, it was dated in June, 1798, before which time Pollard had become insolvent. But supposing John and Samuel Garlick to have been the guardians of the infant children of Camm Garlick, are they responsible in that character for Pollard's debt? A guardian is, undoubtedly, responsible for all the estate of the ward, real or personal, which comes to his hands; but is he responsible for moneys which he might, but did not collect, and which, in strict legal language, never formed a part of the ward's estate? A legacy is not a part of the estate of the legatee, until the executor assents to it. As a part of the personal estate of the testator, it is cast by law on the executor, who has a right to retain it till debts are paid. I have seen no case in which a guardian is charged with a legacy, until he has received it. I do not know that this point has ever been settled in the courts of the state. Were I of opinion that John and Samuel Garlick were really to be considered as testamentary guardians, I should think it necessary to look into this point, before I should feel myself justified in saying that they were chargeable with this legacy.

If John and Samuel Garlick are not chargeable with Pollard's debt, as guardians, we are next to inquire whether

2. They are chargeable as executors? This depends, I think, on the English will, and on the character held by Pollard, under that will. That John and Samuel Garlick were general executors, and that they are liable for this debt, if it was their duty to collect it, and if they had the right and the power to enforce its payment, are, I think, propositions not to be questioned. The whole inquiry, then, is, was it their duty to collect it, and could they coerce its payment? The clauses of the will which relate to this subject, are those in which Benjamin Pollard and Thomas Hall are appointed guardians of his children, and executors of his will. They are in these words: "And I do hereby appoint the said Benjamin Pollard and the Rev. Thomas Hall, guardians of the persons and estate of my said children, during, and until such time as the several sums of money by me hereinbefore bequeathed, can be paid for their use and benefit, into the hands of the several persons by me nominated and appointed guardians of the persons and estates of my said children, under the said will and disposition, by me made and executed prior to my departure from America, as aforesaid." "And I hereby appoint the said Benjamin Pollard and Thomas Hall,

joint executors, in trust, of this my will." The legacies to which the plaintiffs were entitled, were in the hands of Benjamin Pollard, either as their guardian, or as executor. Let it be that the money was held by him as guardian. Have the executors a right to sue the guardian for money of the ward, which came lawfully to his hands, if it be not required for the debts of the testator? I believe he has no such right; I am persuaded that such a suit would be of the first impression. But on coming to America, Benjamin Pollard ceased to be guardian, and was bound to pay over the money to those who were entitled to receive it. But who were entitled to receive it? Not the executors, I think, because it had been paid by them to the guardian for the use of the infants, and had consequently become a part of their estate. The testator had shown his intention that the executors in Virginia should not receive it, for he directed specially that the money should be paid to the guardians in Virginia. Had the executors been really guardians, they would have received the money as guardians, not as executors. Had the guardians and executors been different persons, the money would have been payable to the guardians, not to the executors—if not required for debts.

But suppose the executors entitled to receive this money, would this circumstance attach responsibility to John and Samuel Garlick? Benjamin Pollard, who was in possession of it, was also an executor; if he is to be considered as a general executor, the law is clear that one executor cannot sue another, and that one executor is not liable for money in the hands of another. The question whether he is to be considered as general executor, or, if not, what limitations are imposed on his power, depends on the will. The words are, "and I hereby appoint the said Benjamin Pollard and Thomas Hall joint executors in trust of this my will." The particular paper which contains this appointment, contains also a reference to, and a confirmation of, the former will. The two papers make one instrument, and constitute one will in law, and I should feel some difficulty in determining the question, whether Benjamin Pollard was not executor in Virginia as well as in England; whether he was executor of the whole will, or of that particular paper only which was executed in England. But let it be conceded that he was to execute that part of the will only which was made in England. What is the extent of his power, and what the relation in which he stood to the executors in Virginia, and to the legatees of Camm Garlick? He was an executor in trust of the English will; his power and duty under that will were, to settle the affairs of Camm Garlick in England, collect the money due to him, and pay it to the guardians of his children in Virginia. The guardians were to become

trustees of the money for the benefit of the infants. The beneficial interest, then, was, from the commencement, in the infants; the executors and guardians in England were trustees for them. Benjamin Pollard continued to be executor for the purpose of the trust; he received the money as executor and trustee, and retained those characters till the trust was executed. If, then, the money was in his hands as guardian, and the executors had a right to collect it, Benjamin Pollard might be considered executor of that part of the will, and being in possession of the money, his co-executors had no power over it. If this money which he collected is to be considered as remaining in his hands as executor, a part of the foregoing reasoning applies directly to the question. He was, it must be admitted, unfaithful to his trust as executor in trust; but he still retained that character, and could not divest himself of it till the trust was executed; the children, and not the executors, were the cestui que trust; the children, and not the executors, could coerce its execution; the executors, therefore, cannot be responsible for its non-execution. I feel myself constrained to say, that the representatives of John and Samuel Garlick, are not chargeable with Pollard's debt.